UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Jeffrey Johnson

   v.                                          Case No. 16-cv-375-PB
                                               Opinion No. 2017 DNH 214
Nancy A. Berryhill,
Acting Commissioner of
Social Security Administration


**MEMORANDUM AND ORDER**


     Jeffrey Johnson challenges a decision by the Acting Commissioner of the Social Security Administration (SSA) to deny his claim for Social Security disability insurance (SSDI) benefits.  Johnson argues that the administrative law judge (ALJ) made three errors when determining his residual functional capacity (RFC): he failed to properly evaluate evidence of his severe mental impairments, improperly weighed the opinions of various medical providers, and failed to properly consider his pain complaints.  Johnson also argues that the ALJ incorrectly relied on the opinion of a vocational rehabilitation expert in determining that he was not disabled because the expert's opinion did not take account of Johnson's severe mental impairments.  For the following reasons, I affirm the Commissioner's decision.

## I. BACKGROUND

Johnson is a 56 year-old male who worked as an ironworker for most of his career. Doc. 12 at 2. He injured his shoulder in 2008, and has not worked since. Doc. 12 at 2, 13. Tr. 71-72. He alleges that he suffers from: "left knee problems, anxiety, chronic pain, insomnia, depression, broken neck, rotator cuff, right shoulder problems, broken knee/wrist/elbow, and a history of three hernia operations." Doc. 12 at 1. Several of Johnson's alleged impairments predate his 2008 injury. Doc. 12 at 5.[1]

Johnson appeals from a June 16, 2016 decision of the Appeals Council denying his request to review an ALJ's determination that he is not disabled.

## II. THE ALJ'S DECISION

The ALJ applied the five-step analysis required by 20 C.F.R. 404.1520 in analyzing Johnson's claim. At step one, the ALJ determined that Johnson was not engaged in substantial

---

[1] In accordance with Local Rule 9.1, the parties have submitted a joint statement of stipulated facts (Doc. No. 12). Because that joint statement is part of the court's record, I only briefly discuss the facts here. I discuss further facts relevant to the disposition of this matter as necessary below.

2

gainful activity. Tr. 17.

At step two, the ALJ determined that Johnson had the following physical impairments: "degenerative disc disease s/p cervical fusion; residuals /p left wrist facture with open reduction internal fixation; s/p arthroscopic surgery left knee; s/p arthroscopic surgery right elbow; s/p right sided rotator cuff repair; s/p right quadriceps muscle tear; s/p deep vein thrombosis (right leg). . . ." Tr. 17. He also concluded that Johnson suffered from "affective disorder" and "anxiety-related disorders." Tr. 17.

At step three, the ALJ determined that Johnson did not have any of the impairments listed in 20 C.F.R., Subpart P, Appendix 1. Tr. 18. In determining that Johnson's mental impairments did not warrant a finding of disability, the ALJ found that Johnson had "moderate difficulties" with regard to "concentration, persistence, or pace" but that he did not qualify as disabled at step three because his impairments "did not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration." Tr. 19- 21.

At step four, the ALJ determined that Johnson,

> had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except he was able to lift and/or carry up to 20 pounds occasionally

3

> and up to 10 pounds frequently; to stand and/or walk for up to 6 hours in an 8-hour workday; and to sit for more than 6 hours in an 8-hour workday. He had unlimited use of his hands and feet to push and/or pull. He was able to carry out short and simple instructions without special supervision; to maintain attention, concentration, persistence and pace throughout the normal 8-hour workday and 40 hour workweek; to interact appropriately with peers and supervisors; and to accommodate change.

Tr. 21-22. In making this determination, the ALJ noted that, "the mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment [than the analysis at steps two and three] by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders." Tr. 21. The ALJ noted, "[a]lthough adjudged to be 'non-severe,' all of the claimant's above-noted medically determinable impairments were taken into considered [sic] upon assessing his residual functional capacity." Tr. 18. The ALJ stated, "while the claimant also alleges significant ongoing symptoms and limitations related to anxiety and depression, a review of his records likewise fails to reveal evidence of medically documented findings and/or a treatment history consistent with his allegations." Tr. 27. After considering "the medical evidence of record as a whole," the ALJ found "that, while there is evidence of record to support a finding that the claimant . .

4

. was credibly limited to the performance of simple tasks, there is a lack of evidence to warrant any further reduction of his mental residual functional capacity." Tr. 27.

At step five, after considering the opinion of a vocational expert based on a hypothetical question, the ALJ determined that Johnson could work in a "light exertion" job, as a price marker, housekeeper, or small products assembler. Tr. 34. The ALJ then denied Johnson's claim for SSDI. Tr. 34.

### III. STANDARD OF REVIEW

I am authorized under 42 U.S.C. § 405(g) to review the pleadings submitted by the parties and the administrative record and enter a judgment affirming, modifying, or reversing the "final decision" of the Commissioner. That review is limited, however, "to determining whether the ALJ used the proper legal standards and found facts [based] upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). I defer to the ALJ's findings of fact, as long as those findings are supported by substantial evidence. Id. Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)

5

(quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

If the ALJ's factual findings are supported by substantial evidence, they are conclusive, even where the record "arguably could support a different conclusion." Id. at 770. If, however, the ALJ "ignor[ed] evidence, misappl[ied] the law, or judg[ed] matters entrusted to experts," her findings are not conclusive. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam). The ALJ determines issues of credibility and draws inferences from evidence in the record. Irlanda Ortiz, 955 F.2d at 769. The ALJ, and not the court, must resolve conflicts in the evidence. Id.

### III. <u>ANALYSIS</u>

Johnson argues that the ALJ erred in determining his RFC by failing to properly evaluate his severe mental impairments, failing to give proper weight to the opinions of various physicians, including his "treating source," and failing to properly consider Johnson's pain complaints. Doc. 10-1 at 3. Johnson also argues that the ALJ erred in relying on an opinion of a vocational rehabilitation expert that he could perform other work because the opinion failed to take account of Johnson's severe mental impairments. Doc. 10-1 at 5. The

6

Acting Commissioner responds by claiming that the ALJ's rulings were proper because the ALJ fully considered Johnson's mental impairments and pain complaints, properly weighed the opinions of all of the physicians involved, and included all of his functional limitations in the hypothetical question he posed to the vocational expert.

A.  **Severe Mental Impairments**

Johnson first challenges the ALJ's determination that his RFC allowed him to "carry out short and simple instructions without special supervision; to maintain attention, concentration, persistence, and pace throughout the course of a normal 8-hour workday and 40-hour workweek; to interact appropriately with peers and supervisors; and to accommodate change."  Tr. 21-22.

In determining Johnson's RFC, the ALJ noted that Dr. Juliana Read had performed a psychological evaluation of Johnson in which she determined that he had "concentration and memory deficits," along with major depressive disorder, post-traumatic stress disorder, obsessive compulsive disorder, and alcohol abuse.  Tr. 18.  Although the ALJ took account of Johnson's impairments, he nevertheless supportably determined that they only slightly limited his RFC.  Tr. 18.  The record contains ample evidence to support this determination.  First, the ALJ

7

noted that while Johnson claimed he had "significant difficulties during the period under review maintaining focus and concentration and completing tasks," Dr. Read opined that Johnson was still "capable of maintaining attention," able to perform "simple tasks," and "capable of interacting appropriately and communicating effectively with others." Tr. 20, 27, 29. Second, the ALJ noted that when Johnson underwent an assessment at the Mental Health Center of Greater Manchester, the assessor did not mention that he had impaired concentration. Tr. 20-21. Third, the ALJ noted that Dr. Gus Emmick, Johnson's primary care physician, said that Johnson had "some mild limitation in social functioning," but "no limitation in his ability to understand, remember and carry out instructions." Tr. 30. Fourth, the ALJ noted that Dr. Christopher Braga said that Johnson had some symptoms of anxiety and depression, but that his mental health symptoms were "fairly well controlled." Tr. 28. Fifth, the ALJ noted that Dr. Michael Schneider determined that Johnson had "ongoing symptoms of anxiety and depression," but "was able to maintain adequate attention as well as to understand, remember and carry out short and simple instructions and to complete a normal workweek." Tr. 32.

These references demonstrate that the ALJ considered the opinions on Johnson's mental limitations from each of the

physicians in the record, and weighed each according to the opinion's consistency with the evidence and the opportunity of the doctor to evaluate Johnson. After weighing the various opinions, the ALJ determined that Johnson's medical history "fails to reveal evidence of medically documented findings and/or a treatment history consistent with such a high level of anxiety or depression that the claimant would be unable to maintain a schedule," and that he has, "no limitation in his ability to understand, remember, and carry out instructions." Tr. 32. Nevertheless, the ALJ took into account Johnson's mental limitations, by noting in the RFC that Johnson could "carry out short and simple instructions without special supervision." Tr. 21-22. Given that the ALJ properly considered and weighed all the relevant evidence, I do not second-guess his conclusion. See Gonzalez-Garcia v. Sec'y of Health & Human Servs., 835 F.2d 1, 3 (1st Cir. 1987).

The fact that the ALJ found that Johnson had two severe mental impairments at step two and that he suffered from moderate limitations in his ability to maintain concentration, persistence, or pace at step three does not call his RFC determination into question. See Tr. 17; see also McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1124 (1st Cir. 1986) (stating that the step-two inquiry is a "*de minimis*

9

policy, designed to do no more than screen out groundless claims."). Although an ALJ's step-four determination of the claimant's RFC must take into account his mental and physical limitations, it does not need to "translate severe impairments into the RFC." Duncan v. Colvin, No. CIV-15-1200, 2017 WL 1274392, at *3 (W.D. Ok. Feb. 17, 2017). Here, because the ALJ considered Johnson's mental impairments when formulating his RFC, and included the limitation that he could only carry out "short and simple instructions," his RFC determination is not inconsistent with his evaluation of Johnson's mental impairments at steps two and three. See id.

**B. Weight of Medical Sources**

Johnson next claims that the ALJ committed further error when determining his RFC by giving too little weight to the opinion of his "treating source," Dr. Gus Emmick, and another examining physician, Dr. Gerard Hevern, while giving too much weight to the opinion of a non-examining physician, Dr. Burton Nault.

1. Dr. Emmick

Johnson argues that the ALJ improperly discounted the opinion of his "treating source," Dr. Emmick, without giving "good reasons" for doing so. The Acting Commissioner responds by claiming that Dr. Emmick was not a "treating source" and,

10

even if he were, the ALJ had "good reasons" to discount his opinion.

An ALJ must give a "treating source's" opinion "controlling weight" if that opinion is well-supported and consistent with substantial evidence. 20 C.F.R. § 404.1527(c)(2); see Foley v. Astrue, No. 09-10864, 2010 WL 2507773, *8 (D. Mass. June 17, 2010). Even if a treating source's opinion does not satisfy these requirements, "it may be 'entitled to deference.'" Douglas v. Colvin, 2016 DNH 176, 17 (quoting SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996)). Further, if the ALJ rejects the opinion of a treating source, the ALJ must give "good reasons" for his determination, which must be "both specific and supportable." Jenness v. Colvin, 2015 DNH 167, 15. If, on the other hand, it is not possible to "determine whether the medical opinion evidence was considered [by the ALJ] and implicitly discredited or instead was simply overlooked," I must remand. Kenerson v. Astrue, 2011 DNH 074, 12 (internal quotations omitted). As long as the ALJ satisfies this standard, I will uphold his decision to discount a treating source's opinion. Costa v. Astrue, 565 F.Supp.2d 265, 271 (D. Mass. 2008).

Although I agree with Johnson that Dr. Emmick was a "treating source," I nevertheless conclude that the ALJ had "good reasons" to give his opinion less than controlling weight

11

because it was contradicted by other evidence in the record, including Johnson's own testimony and the testimony of other physicians.  See [Rodriguez, 819 F.2d at 3](Rodriguez,%20819%20F.2d%20at%203).

Dr. Emmick stated that Johnson could not stand for more than two hours, could not lift more than ten pounds, and could not stand or sit for long periods of time.  Tr. 29.  These opinions, however, are contradicted by Johnson's own testimony during which he admitted that he could lift up to 25 pounds, use his hands without limitation, and could bend, kneel, squat, and climb stairs.  Tr. 29-30; 294; 501-515.  Johnson also testified that he had tapered off or discontinued much of his treatment for the injuries that Dr. Emmick had observed.  Tr. 25-26, 664. See [Wilson v. Colvin, 2014 DNH 100, 26](Wilson%20v.%20Colvin,%202014%20DNH%20100,%2026) (noting that an ALJ may consider the absence of treatment for a particular injury as a factor in determining whether the claimant's allegations of injury are credible).

The ALJ's decision to discard Dr. Emmick's opinions is also supported by the opinions of other examining physicians.  Dr. Ralph Wolf examined Johnson in April, 2012, and found no issues with Johnson's spine.  Tr. 17.  Dr. Wolf also noted that Johnson could sit and walk comfortably.  Tr. 17.  Dr. Gerard Hevern, who also examined Johnson, noted that he could "do almost all the tasks around the house."  Tr. 590.  Finally, the ALJ found that

12

the record did not contain "medically documented objective findings" to support Dr. Emmick's opinions about Johnson's physical limitations. See Tr. 29-30. This evidence collectively provides ample support for the ALJ's decision to discount Dr. Emmick's opinions.

2. Dr. Hevern

Johnson also claims that the ALJ improperly discounted the testimony of Dr. Hevern, who examined him in person. See Tr. 552-553. The Acting Commissioner argues that the ALJ applied the factors required to evaluate the weight given to a medical opinion of an individual who is not a "treating source," and properly discounted Dr. Hevern's opinion because it was contrary to other evidence in the record. See Berrios-Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 431 (1st Cir. 1991).

When weighing the testimony of a physician who is not the claimant's "treating source," an ALJ must consider the examining relationship, treatment relationship (including length of the treatment relationship, frequency of examination, and nature and extent of the treatment relationship), supportability of the opinion by evidence in the record, consistency with the medical opinions of other physicians, whether the doctor is evaluating a claimant in an area of the doctor's expertise, and any other relevant factor. 20 C.F.R. § 404.1527(c); see Berrios-Lopez,

13

951 F.2d at 431.

Here, the ALJ gave Dr. Hevern's testimony "little weight" because his opinion was unsupported by the evidence in the record, inconsistent with the medical opinions of Dr. Nault, Dr. Goodarzi, and Dr. Wolf, and inconsistent with Johnson's own testimony. Tr. 30. Dr. Hevern diagnosed Johnson with many of the same physical ailments that the other doctors did – a "severe right leg injury," deep vein thrombosis in his right leg, post-traumatic stress disorder, and "probable cognitive impairment." Tr. 573. He also believed, however, that these symptoms would only limit Johnson by giving him a "decreased range of motion of his right hip and right knee" and "decreased range of motion of his right shoulder." Tr. 573. Although the ALJ credited these portions of his opinion which are consistent with the other physicians' opinions in the record, he permissibly rejected Dr. Hevern's conclusory opinion that Johnson was "totally disabled," because such an opinion is not a medical opinion, but rather is a legal conclusion, which is left to the ALJ to decide. See 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.")

### 3. Dr. Nault

Johnson argues that the ALJ gave more weight than he should have to the testimony of Dr. Burton Nault, who did not physically examine Johnson at any point, but merely reviewed his medical records. The Acting Commissioner argues that the ALJ was entitled to give greater weight to the opinion of Dr. Nault, a non-treating physician, because it was consistent with both other medical evidence in the record and with Johnson's own testimony. See Berrios-Lopez, 951 F.2d at 431; Abubakar v. Astrue, No. 11-cv-10456, 2012 WL 957623, at *11-*12 (D. Mass. Mar. 21, 2012).

Dr. Nault opined that Johnson was unsuited for heavy labor because he was limited in his ability to lift and carry objects. Tr. 31-32. Dr. Nault noted, however, that Johnson was not completely barred from physical labor and could perform "lifting and carrying at up to the medium exertion level." Tr. 31-32. The ALJ was entitled to rely on this opinion because it was consistent with the medical testimony from Dr. Wolf, Dr. Schneider, and Johnson's own testimony. Tr. 17, 29-30, 294, 501-515, 590.

## C. Pain Complaints

Johnson next argues that the ALJ failed to evaluate his pain complaints using all of the factors listed in 20 C.F.R. §

15

404.1529, and instead only considered one of those factors: that Johnson was not actively undergoing treatment for his physical injuries. The Acting Commissioner responds by claiming that the ALJ properly evaluated Johnson's pain complaints by considering them in light of his documented physical injuries, his treatment history, and the activities in which he was able to continue to participate.

The ALJ must consider the claimant's pain complaints when determining his RFC. 20 C.F.R. § 404.1529. However, the ALJ is not required to accept the claimant's assertion of pain wholesale. Shaw v. Sec'y of Health & Human Servs., 1994 WL 251000, at *2 (D. Mass. June 9, 1994) (finding claimant's assertion of pain was unsupported by the other medical evidence). Instead, when evaluating a claimant's assertions of pain, the ALJ must consider the claimant's subjective symptoms of pain, whether his daily activities are limited by the pain, whether there are factors that make the pain worse or better, whether the claimant is receiving treatment for the pain, and whether the pain is consistent with the claimant's other objective medical evidence. 20 C.F.R. § 404.1529(c); see Avery v. Secretary of Health & Human Servs., 797 F.2d. 19, 29 (1st Cir. 1986).

Here, the ALJ evaluated Johnson's level of pain by

16

considering a number of the factors set out in 20 C.F.R. § 404.1529(c). First, the ALJ noted that Johnson had not received ongoing treatment for his back pain throughout the period of his claimed disability. Tr. 17. See Irlanda Ortiz, 955 F.2d at 769. The ALJ also compared Johnson's pain complaints with his objectively-measurable underlying symptoms. The ALJ determined that Johnson's wrist injury had healed well, and only slightly limited the use of his wrist. Tr. 17, 416. He next noted that Johnson's pain complaints were focused primarily on back pain that resulted from an injury in 1992, but that his MRIs and exams by Dr. Wolf showed no problems with his back or spine. Tr. 17. He noted that Johnson could sit and walk normally. Tr. 17. Johnson himself reported that his pain was improving. Tr. 539. Dr. Heven testified that when Johnson was on the proper medication, he could do all of his chores around the house. Tr. 25, 590.

Despite these indicators that Johnson's pain was not too severe, the ALJ noted that he nonetheless considered Johnson's pain complaints when formulating his RFC. Tr. 18 (noting that he considered all of the claimant's "non-severe" impairments, including his statements of pain). Accordingly, the evidence in the record, including evidence of Johnson's pain, does not undermine the ALJ's determination that Johnson had an RFC

suitable for doing "light work."

**D. Vocational Expert**

Johnson also argues that the ALJ erroneously based his determination that Johnson was not disabled on a vocational expert's opinion about a hypothetical claimant who did not possess the same severe mental impairments as he had. See Rose v. Shalala, 34 F.3d 13, 19 (1st Cir. 1994).

"In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that the claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 516 (6th Cir. 2010). Here, however, the ALJ's hypothetical included all of Johnson's relevant mental impairments. Tr. 75-76. See Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982). The hypothetical included the limitation that the claimant, "was able to carry out short and simple instructions without special supervision; maintain attention, concentration, persistence and pace for a normal eight-hour workday and 40-hour workweek; able to interact appropriately with peers and supervisors and accommodate change." Tr. 76. This comported with the ALJ's RFC determination. Tr. 21-22.

Because the ALJ included the exact same mental limitations

from Johnson's RFC in the hypothetical presented to the vocational expert, the vocational expert's opinion took into consideration all of the relevant facts. Cohen v. Astrue, 851 F.Supp.2d 277, 284 (D. Mass. 2012). Therefore, the ALJ properly relied upon the vocational expert's opinion that Johnson could perform certain jobs in the national economy.

## IV. CONCLUSION

For the aforementioned reasons, I grant the Acting Commissioner's motion to affirm (Doc. No. 11) and deny Johnson's motion to reverse (Doc. No. 10). The clerk is directed to enter judgment accordingly and close the case.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

October 12, 2017

cc: Daniel W. McKenna, Esq.
    T. David Plourde, Esq.